| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>In Re:<br><br>Jeffrey Allen Roberts,<br><br>Debtor. | Case No.:   14-25083-ABA<br><br>Adv. No.:   25-01299-ABA |
| Jeffrey Allen Roberts, Plaintiff<br><br>v.<br><br>Firstmark Services, PNC Bank, Wells Fargo & Company, Earnest Operations, LLC, American Educations Services, Defendants. | Chapter:   7<br><br>Judge:   Andrew B. Altenburg, Jr.<br><br>Hearing Date: November 18, 2025 |

**MEMORANDUM DECISION**

    Today, the court must address three separate motions to dismiss filed by three separate defendants. Because all the underlying relevant facts are similar and/or the same, and the law and the law of this case[1] is equally applicable, for convenience, the court is issuing this one Memorandum Decision.

    The Plaintiff/Debtor, Jeffrey Allen Roberts ("Debtor"), commenced this Adversary Proceeding by filing a complaint to recover damages for alleged violations of the discharge injunction pursuant to section 524 of the Bankruptcy Code, 11 U.S.C. § 524 (the "Complaint"). Doc. No. 1. Although the Debtor never sought a determination of dischargeability of his admitted student loans before he received his discharge, he now asserts that his student loan obligations were dischargeable *at the time* he filed his chapter 7 bankruptcy case in 2014 and the post-petition and post-discharge efforts of Defendants, American Educations Services ("AES"), Nelnet Servicing, LLC d/b/a Firstmark Services ("Firstmark"), and PNC Bank ("PNC"), (collectively with AES and Firstmark, the "Defendants"), to collect those loans violates the discharge injunction. For the reasons that follow, the court finds that pursuant to Fed.R.Civ.P. 12(b)(6) the Complaint fails to state a claim upon which relief can be granted as to the Defendants, amendment to the Complaint would be futile, and Defendants' motions are granted.

---

[1] The court's previous two decisions, its *Memorandum Decision* to the *Motion to Dismiss filed by Earnest Operations, LLC as a Defendant or in the Alternative, for Summary Judgement dismissing Earnest Operations, LLC as a Defendant filed by Defendant Earnest Operations, LLC*, Doc. No. 15, and its *Memorandum Decision* related to *the Motion re: For Relief From Judgement Under Fed.R.Civ.P. 60(b)* filed by the Debtor, Doc. No. 31, are incorporated herein.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012 and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

The Debtor filed a voluntary Chapter 7 petition for relief on July 24, 2014, Bankr. Case No. 14-25083 (the "Main Case") and received a discharge of eligible debts on December 5, 2014 (the "Discharge Order"). Doc. No. 20 in the Main Case.[2] The Main Case was closed on December 11, 2014.

The Debtor reopened the Main Case on June 24, 2025, for the purpose of commencing this Adversary Proceeding, Doc. Nos. 31 and 37, seeking to discharge various obligations he admits were student loans and to retroactively hold the creditors involved with the student loan obligations in violation of the Discharge Order for efforts made to collect the student loan debt after entry of the Discharge Order. On July 21, 2025, the Complaint was filed. Doc. No. 1.

Shortly thereafter, the following motions were filed: 1) the *Motion to Dismiss Adversary Proceeding* filed by AES (the "AES Motion"), Doc. No. 12; 2) the *Motion to Dismiss Adversary Proceeding* filed by Firstmark (the "Firstmark Motion"), Doc. No. 28; and 3) the *Motion to dismiss case for other reasons re: Failure to State a Cause of Action, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT OF PLAINTIFF JEFFREY ALLEN ROBERTS FOR DETERMINATION OF DISCHARGEABILITY AND DISCHARGE VIOLATION* filed by PNC (the "PNC Motion") Doc. No. 29 (together with the AES Motion and the Firstmark Motion, the "Motions"). The Debtor filed separate opposition/responses to the AES Motion and the Firstmark Motion. Doc. Nos. 24 and 34. The Debtor filed no opposition to the PNC Motion. Firstmark and AES also filed a response or reply to the Debtor's opposition/responses. Doc. Nos. 35 and 36, respectively.

On November 18, 2025, the court conducted its hearing on the Motions. Counsel to the Defendants appeared and made arguments. The Debtor participated by Zoom but later advised the court that he was having equipment issues and could not utilize his video or microphone. Nevertheless, the Debtor subsequently confirmed that he was able to listen to the entire hearing. To be sure, the Debtor's inability to operate his video or microphone does not affect the court's

---

[2] "A bankruptcy court may take judicial notice of the docket of the main case in an adversary proceeding." *In re Flickinger,* No. 1:09-BK-08739MDF, 2010 WL 3431659, at *2 n.3 (Bankr. M.D. Pa. Aug. 30, 2010) (citing *In re Di Vittorio,* 430 B.R. 26 (Bankr. D. Mass. 2010)); Federal Rule of Evidence 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

decision in any way or change the result or law here. The court considered all of the Debtor's submissions.

The court took the matter under advisement. The record is closed. This matter is now ripe for disposition.

## DISCUSSION

### Discussion Relevant to All Defendants

The Debtor filed a chapter 7 petition in 2014. Complaint ¶¶4. "At the time of Debtor's bankruptcy filing, Debtor had student loan obligations . . .." Complaint ¶17. At a hearing on October 21, 2025 related to the Debtor's *Motion re: For Relief From Judgement Under Fed.R.Civ.P. 60(b)* ("Relief Motion"), the Debtor confirmed that the purpose of the loans was that they were to serve as student loans. Indeed, on Schedule J to his petition, the Debtor reflected a monthly expense of $400 for "student loans." Main Case Doc. No. 13, p. 19. The Debtor did not list any debt for a creditor that he identified as having student loan claims on his bankruptcy petition or schedules. Main Case Doc. Nos. 13, pp.1-13 and Doc. No. 13-1, p. 8-10. Consequently, no creditor whose debt was related to the student loan obligations received notice of the Debtor's bankruptcy filing. *See* Main Case Docket Doc. Nos. 1, 10, 13, and 21. Certainly, none of the Defendants here were listed as creditors or parties-in-interest.[3] *Id.* What is more, the Debtor did not file any adversary proceedings seeking the dischargeability of any debts, including his student loans, before he received his discharge. *See generally* Main Case docket. The Debtor received the Discharge Order[4] in his case on December 5, 2014. Complaint ¶11. The Main Case was closed on December 11, 2014. Complaint ¶12.

Some nine (9) plus years later, the Debtor's student loans were refinanced through Earnest Operations, LLC ("Earnest") in 2024. Complaint ¶19. On April 26, 2024, the Debtor entered a Refinance Education Loan with Earnest and the funds were dispersed on or about May 6, 2024. Doc. No. 5, ¶4. The Debtor stopped paying Earnest on the refinanced loan. Complaint ¶24.

In his Complaint, the Debtor alleges that despite the Discharge Order, the loans have since been improperly transferred and collected by the all the Defendants. Specifically, the loans originally issued by Astrive Student Loans ("Astrive") and serviced by AES have been transferred to multiple defendants, and most recently to Earnest. Complaint, ¶¶17, 19. Although the Debtor recognizes the loans as students loans, his theory under Count I of the Complaint is that the loans were non-qualified education loans that did not meet the criteria for exemption under 11 U.S.C. § 523(a)(8) because: (1) the loans were not certified by an educational institution; (2) the funds were

---

[3] The court observes that although not at all a basis for the court's decision, the Debtor's failure to list the Defendants and/or any other creditor whose debt was related to the student loans at the time he filed the Main Case also results in the debt not being discharged under 11 U.S.C. §523(a)(3). There can be no willful violation of the discharge injunction for debts not discharged.

[4] The Discharge Order clearly states: "**Debts that are Not Discharged.** . . . d. Debts for most student loans." *See* Doc. No. 20 at 2.

disbursed directly to Debtor, not to a school; and (3) the loan amounts exceeded the cost of attendance and were used for non-educational expenses. Complaint, ¶18. Therefore, the student loans are dischargeable. The Debtor makes no claims of undue hardship[5] in his Complaint.

Under Count II of the Complaint, the Debtor alleges the Defendants willfully violated the Discharge Order by: (1) continuing to report his student loans as due and owing on Debtor's credit report; (2) sending collection notices and demanding payment; (3) accepting payments from the Debtor on discharged debt; and (4) refinancing the discharged debt into a new debt. Complaint, ¶ 20. The Debtor seeks damages for these violations and asks the court for a declaratory judgment finding that the loans originated by Astrive Student Loans and serviced be AES were discharged in December 2014 through the Discharge Order and Debtor also seeks related relief as a result of the alleged violation of the Discharge Order.

In another Memorandum Decision issued in this Adversary Proceeding in connection with defendant Earnest's Motion to Dismiss, Doc. No. 15, the court relying on the undisputed facts and relevant case law ruled that it was/is the burden of the Debtor, not the creditor, to bring an action to dispute the nondischargeability of an educational loan because such loans are presumptively nondischargeable by operation of law until a debtor seeks and receives a determination to the contrary. *Id.* at p. 4 (citations omitted). Because the Debtor failed to previously bring such an adversary proceeding in his Main Case, the student loans were not discharged by the Discharge Order. His student loan debt remained nondischargeable as a matter of law. Naturally, since the student loans *were not discharged* there *could be no violation* of the Discharge Order. In addition, the court concluded that even if the court can *now* discharge the original student loans, the determination would have no effect on the post-petition consolidation loan with defendant Earnest, as that debt was a new post-petition debt. Citing overwhelming authority, the court concluded that the recent consolidation agreement with defendant Earnest extinguished the pre-petition debt, and *gave rise to a new post-petition debt* which is not subject to discharge and defendant Earnest could not have violated the Discharge Order when it refinanced and attempted to collect that post-petition and post-discharge debt. The court stated that there can be no cause of action in this regard and, any amendment to the Complaint would be futile as the facts and applicable law cannot be changed. Accordingly, the Debtor failed to state a claim against defendant Earnest upon which relief can be granted in this court, warranting a granting of its motion to dismiss. The order dismissing the Complaint as to defendant Earnest remains a final order.

Having trouble with the court's decision related to defendant Earnest, the Debtor filed his Relief Motion. In another Memorandum Decision issued in connection therewith, Doc. No. 31, the court reiterated that:

> 11 U.S.C. § 523(a)(8) provides in relevant part that a discharge under section 727 of the Bankruptcy Code does *not* discharge an individual debtor from any debt *"unless excepting such debt from discharge* under this paragraph would impose an undue hardship on the debtor . . ." *Id.* (emphasis added). This plain language requires action determining that the debt is dischargeable. A debt does not become discharged just because a debtor says it should be. Rather, it places the burden on a debtor to seek dischargeability of a student loan through the filing of a complaint

---

[5] An element required under 11 U.S.C. § 523(a)(8).

> in an adversary proceeding in their case. Until a determination of dischargeability is made by the court, the debt remains outstanding. Because the Debtor here failed to previously seek a determination that his student loan debt was dischargeable, the student loans remained outstanding and [are] *not* discharged [until this court makes a final determination as to the dischargeability of the student loans.] This fact remains unchanged even if the court were to now find the student loans here are dischargeable.

Memorandum Decision, Doc. No. 31, p. 3. Consequently, there can be no violation of the discharge injunction if there has been no determination that the underlying debt has been discharged.[6] *Id.*

The court also fully addressed the case of *In re Christoff*, 527 B.R. 624 (B.A.P. 9th Cir. 2015) upon which the Debtor relied for his theory that the student loan debt here is dischargeable because the loans were non-qualified education loans that did not meet the criteria for exemption under 11 U.S.C. § 523(a)(8). The court pointed out that the Debtor's reliance on *Christoff* (a case by which this court is not bound) is misplaced mainly because the crucial facts are different, but more importantly, here he is seeking to retroactively apply that decision and punish his creditors for properly exercising their rights as a result of *his failure* to seek a determination as to the dischargeability of his student loans. Nevertheless, after considering the law and the facts of this case, the court dismissed the Debtor's theories under *Christoff* because the application of law there and the facts here do not support a favorable finding for the Debtor. *See generally*, Memorandum Decision, Doc. No. 31. The order denying the Relief Motion remains a final order.

### The Debtor Cannot Prevail on Count II of the Complaint For a Claim for a Violation of the Discharge Injunction

Even if the Debtor could convince the court that his student loan obligations are now dischargeable, and that the Defendants would be bound by that discharge, the Debtor still cannot prevail on his claims under Count II of the Complaint that he is entitled to damages from the Defendants for a willful violation of the discharge injunction. In this case, the court has *repeatedly* held that the burden is on the debtor, not the creditor, to bring an action to dispute the nondischargeability of an educational loan because such loans are nondischargeable by operation of law until the debtor *seeks and receives* a determination to the contrary. Until a determination of dischargeability is made by the court, the debt remains outstanding and *there can be no violation of the discharge injunction* as the debt has not been discharged. It is not relevant the debt might have been dischargeable at the time of his original bankruptcy filing. Discharge is not automatic because an actual determination of dischargeability by the court *must* be made. Simply put,

---

[6] Nondischargeable debts are not subject to the discharge injunction. *See In re Ybarra,* 424 F.3d 1018, 1027 n.11 (9th Cir. 2005) (so concluding); *In re Diaz,* 647 F.3d 1073, 1088 (11th Cir. 2011) (concluding that "the discharge injunction prohibits collection only with respect to dischargeable debts and does not apply to nondischargeable debts") (internal quotations omitted). "As a result, once a discharge has been granted, holders of nondischargeable debts generally may attempt to collect from the debtor personally for such debts." *In re Lakhany*, 538 B.R. 555, 562 (B.A.P. 9th Cir. 2015) (quoting *Diaz,* 647 F.3d at 1088).

because the Debtor here failed to previously seek a determination that his student loan debt was dischargeable, the student loans remain outstanding and are not discharged. Again, *there can be no violation of the discharge injunction. See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 n. 13 (2010) ("student loan debt presumptively nondischargeable 'unless' a determination of undue hardship is made."), Doc. Nos. 15 and 31, the many cases cited therein, and 11 U.S.C. § 523(a)(8). That is the law, and the law of this case here. The court's orders remain in place, and it need not visit this issue any further because:

> The law of the case doctrine "prevents reconsideration of legal issues already decided in earlier stages of a case." *Bedrosian v. IRS*, 42 F.4th 174, 181 (3d Cir. 2022). The doctrine "only applies within the same case," *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010), and affects only issues that were "expressly" or "necessarily resolved" by prior decisions in the same case, *PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 881 n.10 (3d Cir. 2020).

*Home Depot USA, Inc. v. Lafarge North America, Inc.*, 59 F.4th 55, 61(3d Cir. 2023). As a result, the Debtor cannot prevail on a claim that the Defendants violated the discharge injunction as no discharge exists as to the Debtor's student loan debt.

In addition, because the Debtor never sought a determination of nondischargeability of the student loan debt until now, anything that occurred prior to a determination of the dischargeability of the student loan debt remains unaffected. To be sure, the court will not revert this case back to 2014 because the Debtor did not do then what he is trying to do now, and it will certainly not retroactively punish a creditor for something it lawfully did consistent with its rights under the Bankruptcy Code, especially here, where these Defendants had *no* knowledge of the Debtor's bankruptcy filing, the Discharge Order, and/or an opportunity to participate in the Main Case.

To suggest that a determination of dischargeability in the future would somehow subject unknowing creditors to contempt for violating a discharge injunction dating back more than ten (10) years is completely baffling to this court. First, "[a] court may impose sanctions for civil contempt [only] when there is clear and convincing evidence that (1) a valid order of the court existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *In re Bernhard*, No. 23-1358, 2024 WL 379468, at *3 (3d Cir. Feb. 1, 2024) (*citing Robin Woods, Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994)). Here, (1) no order existed discharging the student loans the Debtor complains of; (2) the evidence shows that the Debtor failed to list the student loan obligations or any of the Defendants on his bankruptcy petition or schedules so the Defendants had no knowledge of the Main Case or the Discharge Order; and (3) the Defendants could not disobey an order they were unaware of but more importantly, they would not be bound by because there was no determination of dischargeability made. The Supreme Court has directed that a bankruptcy court may hold a creditor in contempt of the discharge injunction when "there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019). *See also Bernhard*, 2024 WL 379468, at *2 ("In *Taggart v. Lorenzen*, the Supreme Court said that a bankruptcy court may hold a creditor in contempt when 'there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order.'") (*citing Taggart,* 139 S. Ct. at 1801). Based upon the aforementioned facts, there is an objectively reasonable basis for concluding that the Defendants' conduct was lawful — they were not listed on the Debtor's bankruptcy petition or

schedules and no determination of the dischargeability of the student loans was made. Under the *Taggart* standard, there can be no finding of a discharge violation, let alone, conduct warranting sanctions.

Second, under these circumstances, it would be inequitable and illogical for the court to retroactively find a discharge violation and the court is unwilling to do so. Retroactive application of the discharge injunction and finding a sanctionable violation under the circumstances the Debtor has created is a harsh punishment. As well, retroactive application is frowned upon. As the District Court noted in *United States v. Falcone*, No. CIV.A. 09-2269 FLW, 2010 WL 1372435, at *12 (D.N.J. Mar. 31, 2010), "Courts will not 'giv[e] to statutes a retrospective operation, whereby rights previously vested are injuriously affected, unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature.'" *Id.* quoting *Landgraf v. United States,* 511 U.S. 244, 271 (1994)) (quoting *Chew Heong v. United States,* 112 U.S. 536, 559, 5 S.Ct. 255, 28 L.Ed. 770 (1884)). Likewise, this court has also held that statutes cannot be enforced retroactively to punish creditors. *In re Chester*, No. 24-22644-ABA, 2025 WL 2816599, at *8 (Bankr. D.N.J. Oct. 2, 2025) (holding the automatic stay cannot be sprung back retroactively for the purpose of sanctioning a creditor). None of the statutes cited by the Debtor provide for the retroactive imposition of sanctions upon the finding of dischargeability some time in the future. The statutes just do not work that way. Here, the student loan debt has yet to be discharged. If such determination is eventually made, the discharge injunction will only be effective as of the date that determination is made. Thus, the Debtor's claim here of a willful discharge violation does not and cannot exist warranting a dismissal of Count II the Complaint.

Any amendment to the Complaint would be futile as the facts and applicable law *cannot* be changed. There simply can be no finding against the Defendants for a willful violation of the discharge injunction under the facts and standards set forth above. Hence, the Debtor has failed to state a claim against the Defendants upon which relief can be granted warranting a dismissal of Count II of the Complaint with prejudice.

## As to the Defendants, the Debtor Cannot Prevail on Count I of the Complaint Because the Defendants Do Not Own or Service the Refinanced Post-Petition Debt

Under Count I of the Complaint, the Debtor seeks a determination of the dischargeability of his student loan debt as being "non-qualified education loans." The undisputed/admitted facts show that all of the Debtor's student loans were refinanced through Earnest in 2024. Complaint ¶19. Thus, the pre-petition debt no longer exists as the Debtor consolidated that debt into a post-petition loan with another party unrelated to the Defendants and none of the Defendants here service or own any of the refinanced debt. Consequently, the court does not need to undertake a determination of whether the original pre-petition student loans are now "non-qualified education loans" because such an undertaking would yield a fruitless result as any finding would be irrelevant to these Defendants as the pre-petition debt no longer exists and the Defendants do not service or own the post-petition debt. What is more, any amendment to the Complaint would be futile as the facts and applicable law *cannot* be changed. There simply can be no finding the original student loan debt is now dischargeable as it does not exist, and the Defendants would not now be bound

by a determination of dischargeability of the debt since it no longer exists and/or these Defendants do not service or own the post-petition debt. Hence, the Debtor has failed to state a claim against the Defendant upon which relief can be granted warranting a dismissal of Count I of the Complaint.

Notwithstanding the foregoing, and what may merely be an academic exercise, the court will address the pertinent arguments raised related to each of the Defendants.

### **Discussion Relevant to AES[7]**

These facts are undisputed by the Debtor. Pennsylvania Higher Education Assistance Agency ("PHEAA") does business under the fictitious name American Education Services. Doc. No. 12-2, ¶1. PHEAA is a statutorily created state agency of the Commonwealth of Pennsylvania. Among other functions, PHEAA, through AES, provides student financial aid services, including servicing a variety of federal and private student loans. *Id.* at ¶2.

As set forth in the AES Motion, AES previously serviced the three loans for which Debtor was the obligor. *Id.* at ¶3. The loans were obtained by the Debtor to attend Pennsylvania State University. *Id.* at ¶6. AES serviced the loans but never owned any of the loans and did not at any time hold the original promissory notes for the loans. In its capacity as servicer, AES collected and processed payments, maintained account records, and performed other servicing functions on behalf of the owners/holders of the loans. *Id.* at ¶4. ***Prior to the filing of the Complaint, AES no longer serviced any of the loans.*** *Id.* at ¶5.

As to the loans,[8] the first loan was disbursed on or about December 21, 2007 by Union Federal Savings Bank under the Astrive student loan Program (the "First Loan"). The First Loan was subsequently acquired by Wells Fargo in 2009 and was deconverted from AES in September 2010 and responsibility for servicing the loan was transferred to another entity. *Id.* at 3. The second loan was disbursed on or about November 26, 2007 by PNC Bank (the "Second Loan"). The Second Loan was written off on or about July 5, 2024. *Id.* The third loan was disbursed on or about October 27, 2008 by SunTrust (the "Third Loan"). The Third Loan was subsequently acquired and guaranteed by National Collegiate Student Loan Trust under NSLT 2023-A, and was refinanced on or about May 7, 2024 by Earnest. As a result, AES no longer serviced the Third Loan when the Debtor filed his Complaint. *Id.* To sum up, the Second Loan and the Third Loan were written off or transferred in 2024 and the First Loan was deconverted from AES in 2010 and AES was no longer responsible for servicing that loan since then. Doc. No. 12-1 at ¶8. Accordingly, AES has been out of the picture since July 2024 but more importantly, since before the Debtor filed his Complaint.

---

[7] To the extent that the *Discussion Relevant to All Defendants*, the *Discussion Relevant to Firstmark* and/or the *Discussion Relevant to PNC* herein pertains to this Defendant as well, for the sake of brevity, those Discussions are incorporated fully herein and apply to this Defendant.

[8] The information about the origination of the loans is confirmed by the Debtor in his *Plaintiff's Opposition to American Education Services' Motion to Dismiss Adversary Proceeding*, Doc. No 24, at p. 4, Part B.

### AES Motion – Doc. No. 24 ("AES Motion")

AES argues that the Complaint fails to state a claim against AES upon which relief can be granted because the Debtor acknowledges that the loans at issue are "student loans," but the Complaint does not provide any specifics as to the loans and the Debtor's claims for damages, are nothing more than conclusions, and/or does not substantiate the Debtor's claim that the student loans here are excluded from the section 523(a)(8) exception to discharge. Moreover, even if any of the loans formerly serviced by AES are intended to be included in the Complaint, AES was the servicer of the loans, but never owned them, and is therefore not a proper party to the case under Rule 21. AES also alleges that the Complaint was not properly served upon it. In the end, AES argues that the Complaint must be dismissed because, as a servicer, it cannot be held liable for a discharge violation, but in any event, the loans fall within section 523(a)(8) exception to discharge, the Complaint alleges no facts supporting the assertion that any student loans are outside the scope of section 523(a)(8), and the Complaint does not raise any issues related to the required hardship standard and the *Brunner* factors that must be proven to establish undue hardship. *In re Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987).

### Debtor's Opposition to the AES Motion – Doc. No. 24 ("AES Opposition")

In the AES Opposition, the Debtor, relying on significant matters outside the pleadings, argues that (1) the Complaint satisfies the notice pleading requirements under Fed. R. Civ. P. 8(a)(2); (2) servicers are proper parties to discharge injunction violation claims under 11 U.S.C. § 524(a)(2); and (3) recent regulatory and judicial developments establish pattern of systematic discharge violations by AES. The Debtor adds additional facts/findings and arguments and claims discovery is needed because Debtor does not have various loan documents. Debtor posits that when a party presents matters outside the pleadings on a Rule 12(b)(6) motion, the court must either exclude those matters or convert the motion to one for summary judgment under Rule 56 and afford all parties an opportunity for discovery. Fed. R. Civ. P. 12(d). *See generally* AES Opposition.

However, in deciding motions to dismiss pursuant to Rule 12(b)(6), it is what the court considers and *not* what the parties present that turns a motion to dismiss into a motion for summary judgment. When deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint." *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document. *See Pension Benefit Guar. Corp.*, 998 at 1196. Further, considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered. *Id.*

In his Complaint, the Debtor alleges that "[a]t the time of the Debtor's bankruptcy filing, Debtor had student loan obligations originally issued by Astrive Student Loans and serviced by

American Education Services (AES)." Complaint, ¶17. Debtor provides, no specific detail, no names, no amounts, no number of, no lender names and in short, absolutely *no* information about his student loan obligations. The AES Motion is supported by a declaration which provides the specific details of the student loan obligations and in fact, the student loan documents themselves. These documents have not been challenged, and they form the basis of the Debtor's claim. As such, they are integral to and/or explicitly relied upon in the Complaint. Contrary to the Debtor's assertion, they are not matters outside the pleadings which the court must either exclude or convert the AES Motion to one for summary judgment under Rule 56. Relying on the student loan documents is not unfair because the Debtor was surely on notice that the documents would be considered as they are integral to his claim.

Also in the AES Opposition, the Debtor points to several unrelated nonbinding cases involving various student loan lenders including a lawsuit (which lawsuit had no authoritative rulings) that has been voluntarily dismissed involving the Consumer Financial Protection Bureau. The Debtor also cites the Bureau of Consumer Financial Protection Bulletin 2023-01 (the "*CFPB Bulletin*"). The Debtor argues these nonbinding matters demonstrate that:

1. Discharge injunction violations are widespread across the student loan servicing industry;
2. The violations result in hundreds of millions of dollars in liability;
3. Federal courts and regulators recognize the severity of these violations;
4. Borrowers can successfully pursue claims even when servicers possessed superior documentation; and
5. Settlement values reflect years of improper collections multiplied across thousands of borrowers.

AES Opposition, p. 12-13.

The Debtor also relies heavily on the nationwide preliminary injunction issued in *Golden v. FirstMark Services, LLC* (Adv. No. 17-1005), ordering FirstMark Services and PHEAA (AES's parent company) to cease all collection efforts on student loans that borrowers alleged were discharged in bankruptcy. *In re Golden*, 671 B.R. 544 (Bankr. E.D.N.Y. 2025). The Debtor notes the *Golden* court found, *inter alia*, that the lead plaintiff had a substantial claim that her loans were within the scope of her bankruptcy discharge and she was likely to succeed on the merits. The Debtor contends the loans at issue in *Golden* mirror those in his case. The Debtor argues the *Golden* preliminary injunction establishes, that:

1. Loans exceeding cost of attendance are dischargeable;
2. Post-graduation bar exam loans are dischargeable;
3. Servicers cannot rely on blanket policies treating all student loans as non-dischargeable;
4. Servicers have an independent duty to evaluate qualified education loan status;
5. Continued collection after discharge violates fundamental bankruptcy principles;
6. Plaintiffs can succeed on the merits of discharge violation claims without proving all the facts at the pleading stage.

AES Opposition, p. 9-11. The Debtor contends that this court should follow Judge Stong's approach in *Golden* and consider settlements in other unrelated major student loan service matters. *Id*.

In sum, the Debtor argues that the central legal issue is whether Debtor's loans qualify as "qualified education loans" under 26 U.S.C. § 221(d)(l), which determines whether they are excepted from discharge under 11 U.S.C. § 523(a)(8)(B). He argues this determination is fact-intensive and cannot be resolved on a motion to dismiss as further discovery is required.

### AES's Reply - Doc. No. 36 ("AES Reply")

AES argues the following in the AES Reply: (1) the Complaint is woefully deficient in its allegations; (2) it is not a proper party and that no discovery would disclose facts that would make AES, as servicer, a proper party to the action; (3) no discovery could disclose facts showing Debtor sought a determination of dischargeability of his student loans at the time of his Main Case; and (4) discovery is not a substitute for the requirement to file a well-pleaded complaint under Rules 8 and 12. As a result, under Rule 12, the Complaint must cross the plausibility threshold on its face, and since it does not, Count I should be dismissed as to AES with prejudice. As to Count II, AES states it did not violate, willfully or otherwise, the discharge injunction because the loans were not discharged as a matter of law. *See generally* AES Reply.

As to the *Golden* case, AES notes that *Golden* has no bearing on this case because "[t]he *Golden* court, which is outside the Third Circuit, has not reached a decision on the merits, including with respect to whether loans that exceed the cost of attendance are dischargeable; the court merely entered a preliminary injunction with respect to collection of certain loans that exceeded the cost of attendance. *In re Golden*, 671 B.R. at 607, 637. The *Golden* decision therefore carries no precedential weight with respect to whether Debtor's student loans were excepted from discharge and is irrelevant to the analysis here." AES Reply at ¶23. This court agrees.

Indeed, the Debtor's reliance on *Golden* is fatally flawed. First, as noted, the *Golden* court has not made a final decision on the merits on the premise of which the Debtor relies, only a preliminary injunction has been issued and that decision to issue a preliminary injunction has been appealed. Second, even if a final decision on the merits had been made by that court which supports the Debtor's premise here, this court is not bound by that decision and there is no Third Circuit law by which this court would be bound, that supports the Debtor's premise. Third, AES no longer services any of Debtor's student loans so the decision in *Golden* has no practical effect here. Fourth, the Debtor never sought a determination of dischargeability of the student loans here and as such, the loans were not discharged as a matter of law. Finally, as the *Golden* court noted:

> To establish a claim for a violation of the bankruptcy discharge injunction, a plaintiff-debtor must show that the debtor received a discharge, the defendant received notice of the discharge, and the defendant intended the acts that violated the discharge. *Motichko v. Premium Asset Recovery Corp.* (*In re Motichko*), 395

B.R. 25, 31 (Bankr. N.D. Ohio 2008). *See In re Homaidan*, 650 B.R. at 404.

*Golden*, 671 B.R. at 584. In *Golden*, the Debtor listed the student loans on Schedule F of her petition and the student loan creditors received notice of her bankruptcy case and discharge. This enabled the student loan creditors to participate in the proceedings. That did not happen here. The Debtor here, unlike the debtor in *Gold*en, did not schedule the student loan debt on his petition, and therefore the student loan creditors did not receive notice of his bankruptcy filing or discharge and could not participate in this proceeding. Obviously, the student loan creditors here could not have unknowingly intended to violate the discharge injunction. *Golden* is entirely inapplicable to this case.

With regard to *CFPB Bulletin* cited by the Debtor in the AES Opposition, AES argues:

First, the CFPB Bulletin is in no way binding on this Court. Second, it was issued over eight (8) years after Plaintiff's bankruptcy was closed, offering little guidance as to the student loans at issue. Third, the validity of the CFPB Bulletin is questionable at best, given that the case that sought to test its legal theories was dismissed with prejudice. Finally, the CFPB Bulletin *cannot retroactively determine that the Loans were discharged in 2014 when Plaintiff never sought a determination that the Loans* were outside 523(a)(8)'s scope until 2025. *Compare* Complaint, ¶ 34 ("Debtor seeks a declaratory judgment that [the Loans] … were discharged") *with* Earnest Opinion at 4 ("the student loans *were not discharged*") (emphasis in original).

AES Reply, ¶24 (emphasis added). This court agrees with this paragraph in its entirety.[9]

---

[9] The court also entirely agrees with the analysis by AES of the cases cited by the Debtor in footnote 13 in the AES Reply and incorporates that footnote herein:

The Opposition also purports to quote *McDaniel v. Navient Corp.*, 996 F.3d 1190 (10th Cir. 2021). Opposition at 8 (stating that the Tenth Circuit stated, "the discharge injunction applies broadly to bar collection efforts by any party."). AES was unable to locate this case. Plaintiff possibly intended to cite *In re McDaniel*, 973 F.3d 1083, (10th Cir. 2020). However, the quoted language is not in that opinion. Further, *In re McDaniel* involved interpretation of a confirmed chapter 13 plan and an order granting discharge upon its completion where the holder of the loan had participated in the plan confirmation process. The opinion also did not address whether a loan servicer could be the subject of declaratory relief or liable for violations of the discharge injunction.

The Opposition cites *In re McDaniel*, 591 B.R. 821 (Bankr. D.N.M. 2018), aff'd 973 F.3d 1083 (10th Cir. 2020). Opposition at 14 ("the court allowed extensive discovery regarding whether loans met qualified education loan criteria before determining dischargeability."). AES was unable to locate this case. *In re McDaniel*, 973 F.3d 1083, (10th Cir. 2020) mentioned above did not address discovery whatsoever.

The Opposition cites *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000) for the proposition that "servicers who attempt to collect on discharged debts violate the discharge injunction even when they do not own the debt." However, this case does not involve student loans, student loan servicers, or any part of section 523 of the Bankruptcy Code.

The Opposition cites *Homaidan v. SLM Corp.*, 3 F.4th 595 (2d Cir. 2021) for the proposition that "private student loans for non-Title IV eligible schools are dischargeable in bankruptcy." However,

As a result of the court's determinations above finding the grounds for which the Complaint will be dismissed as to AES, it need not address any of the remaining arguments of the parties. As to AES, the Debtor has failed to state a claim against AES upon which relief can be granted warranting a dismissal of the entire Complaint.

### Discussion Relevant to Firstmark[10]

These facts are undisputed. The Debtor does not allege that Firstmark owns any of his educational loans, including those originally issued by Astrive, or that Firstmark holds or has guaranteed these or any of his other educational loans. *See generally* Complaint. In fact, the Debtor simply acknowledges and identifies Firstmark only as a "student loan servicer." Complaint ¶6. Nothing more. As such, Firstmark argues that because it has no ownership or other direct legal interest in the Debtor's student loans, it is not a proper party in interest and should be dismissed as a defendant from Count I. Doc. No. 28-1, p. 7.

Firstmark contends bankruptcy courts routinely dismiss defendants from lawsuits who are not parties in interest. *Cummings v. Jai Ambe, Inc.*, No. 11-CIV-8213 (ER), 2013 WL 620186, at *4 (S.D.N.Y. Feb. 13, 2013); *Bennett v. Strategic Restaurants Acquisition Co., LLC*, No. 09-295-C, 2009 WL 3150433, at *1, n. 1 (M.D. La. Sept. 30, 2009). Firstmark argues this especially applies in a dischargeability action where a debtor "has sued the wrong party in suing the servicer of his student loan, rather than the owner or guarantor of the loan." *Hubbard v. Pa. Higher Educ.*

---

the cited case does not address the relevance of an institution's Title IV status and, in any event, Penn State is a Title IV school.

The Opposition purports to quote *In re Christoff*, 527 B.R. 624 (9th Cir. BAP 2015). Opposition at 16 (stating that the court stated, "examination of objective, documentable facts including but not limited to: loan applications, certifications, promissory notes, disclosures, disbursement records, invoices, and educational institution records" is required to determine whether loans are qualified student loans.). The court did, however, state, in a footnote, "[u]nder § 523(a)(8)(B) to be a 'qualified education loan' under 26 U.S.C. § 221(d)(1), it must, among other things, be a debt for a 'qualified higher education expense,' as defined by 26 U.S.C. § 221(d)(2), which is the 'costs of attendance ... at an eligible educational institution.'" *Id.* n.7.

The Opposition cites *In re Reynolds*, 425 F.3d 526, 532 (8th Cir. 2005) for the proposition that "the cost of attendance limitation … is incorporated into the definition of qualified education loan[.]" Opposition at 18. However, *Reynolds* focused on whether courts "may consider the non-pecuniary effects of the debtor's continuing student loan liability" when assessing undue hardship under 523(a)(8). The court did not address cost of attendance.

The Opposition also cites *In re Kunz*, 489 F.3d 1072, 1076 (10th Cir. 2007) for the proposition that "[d]ismissal before discovery is particularly disfavored in cases involving information asymmetry, where defendants possess superior access to critical evidence." Opposition at 6. However, *In re Kunz* does not mention discovery or involve a motion to dismiss.

AES Reply, footnote 13.

[10] To the extent that the *Discussion Relevant to All Defendants*, the *Discussion Relevant to AES,* and/or the *Discussion Relevant to PNC* herein pertains to this Defendant as well, for the sake of brevity, those Discussions are incorporated fully herein and apply to this Defendant.

*Assistance Agency*, No. 14-1010, 2014 WL 1654703, at *4 (Bankr. E.D.N.Y. Apr. 25, 2014). *See also Kleckner v. AES/Educaid*, 560 B.R. 172, 177 (Bankr. E.D. Pa. Nov. 7, 2016); *Bennett v. U.S. Dept. of Educ.*, No. 15-06051, 2015 WL 5602881, at *2 (Bankr. M.D. N.C. Sept. 22, 2015) ("[t]his court agrees with other courts that have dismissed § 523(a)(8) actions against student loan servicers on the ground that there is no debt owed to the servicer to find dischargeable*"); Srinivasan v. Sallie Mae, Inc.*, no. 10-1545 (RTL), 2010 WL 3633062, at *3 (Bankr. D.N.J. Sept. 7, 2010) (denying a request to enter default judgment against defendant where the debtor "did not owe a debt to Sallie Mae, Inc. on the date she filed for bankruptcy" because "Sallie Mae, Inc. has merely been the servicer of her consolidated student loan" and concluding that "no purpose would be served in declaring the debt dischargeable") (other citations omitted). The court agrees with Firstmark in this regard and Count I of the Complaint must be dismissed.

The Debtor contends servicer liability accrues at time of misconduct, not at the time of litigation and "under well-established remedial principals," liability for wrongful conduct accrues when the misconduct occurs. The Debtor claims that here, the harm occurred when Firstmark collected, not when Debtor filed suit. The Debtor also argues the court's decision as to Earnest is irrelevant to Firstmark's liability for its collections as a servicer before the refinancing occurred. The Debtor argues that Firstmark's conduct in performing those servicer acts can still violate § 524(a)(2). Debtor notes the statute prohibits any act, by any entity, to collect a "discharged debt." The Debtor may be correct. but his position ignores the fact that the student loan debt here *has not been discharged*.[11] Nevertheless, to support his position, the Debtor cites to *Simon v. FIA Card Services*, 732 F.3d 259 (3d Cir. 2013) and *In re Bessette*, 2014 WL 2945030 (3d Cir. 2014). However, neither the quote the Debtor relies on in *Simon* or the actual case of *Bessette* exists. Finally, the Debtor relies again on the *Golden* case and the court incorporates its discussion above without the need to repeat as its reasoning applies equally here.

As a result of the court's determinations above finding the grounds for which the Complaint will be dismissed as to Firstmark, it need not address any of the remaining arguments or theories of the parties. They are simply extensions of the items already discussed, or presented, or are attempts to come at the same theories from new angles. Ignorance of the fact that no determination of dischargeability was ever made cannot give rise to the sensational theories presented (most without any legal support). The arguments are fundamentally flawed when this fact is disregarded. As to Firstmark, the Debtor has failed to state a claim against Firstmark upon which relief can be granted warranting a dismissal of the entire Complaint.

### **Discussion Relevant to PNC**[12]

On November 26, 2007, Plaintiff received a loan from PNC in the amount of $8,5000.00 (the "Loan") in order to attend Pennsylvania State University. *See* Doc. 29-2 at ¶3. On or about

---

[11] As set forth in the *Discussion Relevant to All Defendants,* the Debtor's student loan debt *has not been discharged* and thus, there can be no violation of the discharge injunction.

[12] To the extent that the *Discussion Relevant to All Defendants*, the *Discussion Relevant to AES,* and/or the *Discussion Relevant to Firstmark* herein pertains to this Defendant as well, for the sake of brevity, those Discussions are incorporated fully herein and apply to this Defendant.

May 6, 2024, the Debtor refinanced his debt with Earnest, thereby paying off his PNC student loan. Doc. 29-2 at ¶5; Complaint at ¶19. Thus, any educational debt obligations owed to PNC has been extinguished by the refinance with Earnest.

The Debtor does not dispute these fact as they pertain to PNC and filed no opposition to the PNC Motion. The court finds no basis to disagree with the PNC Motion and adopts the arguments therein. Consequently, no relief can be afforded to the Debtor as to PNC. Debtor received a loan from PNC on November 26, 2007, and refinanced this loan on May 6, 2024 with Earnest, post-petition. Debtor did not previously bring an adversary proceeding to determine dischargeability of this student loan. A determination of dischargeability now is not possible as to any debt previously owned by PNC because that debt has since been extinguished through Debtor's refinancing. Any debt owed to PNC no longer exists, leaving no debt for the court to discharge. *In re McBurney*, 357 B.R. 536, 538-39 (9th Cir. B.A.P. 2006) (adopting the view that a post-petition consolidation student loan is a new, distinct loan, extinguishing prepetition loan debts). *See also In re Grubin*, 476 B.R. 699, 709 (Bankr. E.D.N.Y. 2012) ("It is settled that, where a debtor incurs student loan debt pre-petition, but then enters into a post-petition agreement to consolidate that debt, the consolidation agreement extinguishes the pre-petition debt and gives rise to new, post-petition debt."); *In re Clarke,* 266 B.R. 301, 309 (Bankr. E.D. Pa. 2001) ("It cannot be disputed that the Consolidation Loan extinguished the Original Loans"). As a result, the Debtor cannot prevail on a claim against and Count I of the Debtor's Complaint must be dismissed as to PNC.

In addition, as a result of the court's determinations above finding the grounds for which the Complaint will be dismissed as to PNC, it need not address any of the remaining arguments of PNC. As to PNC, the Debtor has failed to state a claim against PNC upon which relief can be granted warranting a dismissal of the entire Complaint.

As a result of the court's determinations above finding the grounds for which the Complaint will be dismissed as to these Defendants, it need not address any of the remaining arguments.

## CONCLUSION

It is a simple as this: the debt has not been discharged — period. Because the debt has not been discharged, there can be no finding of a discharge violation. There is no basis in law or fact that would allow this court to retroactively apply a discharge injunction and then punish an unknowing creditor for actions it lawfully took under the Bankruptcy Code when there was no discharge injunction in place. And even if the court could somehow now find that the student loan debt might have been dischargeable, such a finding is irrelevant if not moot since the Defendants were not and are not owners of the debt and no longer service the debt and especially since it has been consolidated into a post-petition debt with an unrelated entity. A finding of dischargeability of the debt now is pointless as to these Defendants. Accordingly, the AES Motion, the Firstmark Motion and the PNC Motion are all GRANTED and the Debtor's Complaint as to AES, Firstmark and PNC will be dismissed WITH PREJUDICE.

An appropriate order for each Motion has been entered consistent with this decision.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: December 4, 2025